Slip Op. 20-37

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MACAO COMMERCIAL AND INDUSTRIAL SPRING MATTRESS MANUFACTURER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>LEGGETT & PLATT, INC.,<br><br>    Defendant-Intervenor. | Before: Leo M. Gordon, Judge<br><br>Court No. 19-00005 |

**OPINION**

[Commerce's Final Determination sustained.]

Dated: March 20, 2020

  Susan Kohn Ross and Alesha M. Dominique, Mitchell Silberberg & Knupp LLP of Los Angeles, CA and Washington, DC for Plaintiff Macao Commercial and Industrial Spring Mattress Manufacturer.

  Kelly A. Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With her on brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director. Of counsel was Elio Gonzalez, Attorney, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

  Yohai Baisburd, Jeffery B. Denning, and Chase J. Dunn, Cassidy Levy Kent (USA) LLP of Washington, DC for Defendant-Intervenor Leggett & Platt, Inc.

  Gordon, Judge:  This action involves the U.S. Department of Commerce's ("Commerce") final affirmative determination that Plaintiff Macao Commercial and

Industrial Spring Mattress Manufacturer ("Plaintiff" or "Macao Commercial") circumvented the antidumping duty ("AD") order on uncovered innerspring units ("innersprings" or "innerspring units") from the People's Republic of China ("PRC"). See Uncovered Innerspring Units from the People's Republic of China, 83 Fed. Reg. 65,626 (Dep't of Commerce Dec. 21, 2018) (final affirm. determ. of circumvention of the AD Order) ("Final Determination"), and the accompanying Issues and Decision Memorandum (Dep't of Commerce Dec. 14, 2018), available at https://enforcement.trade.gov/frn/summary/prc/2018-27677-1.pdf (last visited this date) ("Decision Memorandum"); see also Uncovered Innerspring Units from the People's Republic of China, 74 Fed. Reg. 7,661 (Dep't of Commerce Feb. 19, 2009) ("Order").

Before the court is Plaintiff's motion for judgment on the agency record under USCIT Rule 56.2. See Pl.'s Mot. for J. on the Agency R., ECF No. 29[1] ("Pl.'s Br."); see also Def.'s Resp. to Pl.'s Mot. for J. on the Agency R., ECF No. 34 ("Def.'s Resp."); Def.-Intervenor Leggett & Platt, Inc.'s Resp. Opp. Pl.'s Mot. for J. on the Agency R., ECF No. 36; Pl.'s Reply in Supp. Of Mot. for J. on the Agency R., ECF No. 38 ("Pl.'s Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2012),[2] and 28 U.S.C. § 1581(c) (2012). For the reasons set forth below, the court sustains Commerce's Final Determination.

---

[1] All citations to parties' briefs and the agency record are to their confidential versions unless otherwise noted.
[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## I.  Background

Macao Commercial is a foreign producer and exporter of uncovered innerspring units made from Chinese-origin materials. See Decision Memorandum at 4. During the course of the sixth administrative review of the Order, Commerce selected Macao Commercial as one of the two mandatory respondents subject to individual examination during the review. Following Macao Commercial's responses to Commerce's original and supplemental questionnaires, Commerce explained that it intended to evaluate whether self-initiation of an anti-circumvention inquiry would be warranted based upon the information submitted by Macao Commercial during the review. See Uncovered Innerspring Units from the People's Republic of China, 81 Fed. Reg. 62,729 (Dep't of Commerce Sept. 12, 2016) (final results AD admin rev.), and accompanying Issues and Decision Memorandum at cmt. 1 (Dep't of Commerce Sept. 6, 2016), available at https://enforcement.trade.gov/frn/summary/prc/2016-21859-1.pdf (last visited this date).

Pursuant to 19 U.S.C. § 1677j(b), in order to prevent circumvention of an antidumping duty order, Commerce is empowered to find certain merchandise to be within the scope of the order if "before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise [that is subject to an existing antidumping duty order]." 19 U.S.C. § 1677j(b)(1)(B). Commerce proceeded to self-initiate an anti-circumvention inquiry to determine whether innersprings manufactured by Macao Commercial in Macau from raw materials originating in China, including uncoiled steel wire, nonwoven fabric, and glue, and exported to the United States from Macau are circumventing the Order. See Uncovered

Innerspring Units from the People's Republic of China, 81 Fed. Reg. 83,801 (Dep't of Commerce Nov. 22, 2016) (initiation of anticircumvention inquiry on Order).

After gathering additional information from Macao Commercial by issuing supplemental questionnaires and conducting public and closed hearings, Commerce determined that Macao Commercial had failed to provide necessary, requested cost reconciliations. See Decision Memorandum at 9–12. Commerce also found that there were discrepancies and unexplained differences with respect to Macao Commercial's financial statements. Id. Finding that Macao Commercial failed to cooperate to the best of its ability, Commerce determined that the application of facts available with an adverse inference ("AFA") was appropriate in part. Id. at 12. Consequently, Commerce concluded that Macao Commercial's merchandise was subject to the Order pursuant to 19 U.S.C. § 1677j(b). See Final Determination.

## II.     Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting a reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2019). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2019).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the Tariff Act. See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (An agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

### III. Discussion

Pursuant to 19 U.S.C. § 1677j(b)(1)(B), Commerce may determine that merchandise is circumventing an AD order where, "before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which— (i) is subject to such order or finding, or (ii) is produced in the foreign country with respect to which such order or finding applies." 19 U.S.C.

§ 1677j(b)(1)(B). The subsequent subsections of the statute provide factors to guide Commerce's anti-circumvention determinations. See 19 U.S.C. § 1677j(b)(1)(C)–(E) (providing Commerce must assess the significance of the "process of assembly or completion in the foreign country" and "the value of the merchandise produced in the foreign country").

### A.     Completion or Assembly Under 19 U.S.C. § 1677j(b)(1)(B)

Plaintiff's initial challenge focuses on 19 U.S.C. § 1677j(b)(1)(B), which Commerce applied in determining that Macao Commercial circumvented the Order as described above. Plaintiff highlights that Commerce occasionally described Macao Commercial's production process as "manufacturing" instead of solely using the precise terms "completion" or "assembly" as provided in the statute. Pl.'s Br. at 7–12. Commerce rejected Plaintiff's argument that that Macao Commercial's "manufacturing" activities fell outside the scope of § 1677j(b)(1)(B), explaining that "Macao Commercial attempts to use semantics to draw a difference between manufacturing, on the one hand, versus completion or assembly on the other. However, neither the statute nor the legislative history contemplate a distinction between manufacturing and completion or assembly." Decision Memorandum at 13 (citing Omnibus Trade Act, Report of the Senate Finance Committee, S. Rep. No. 100-71, at 99–101 (1987), and the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H. Doc. No. 103-316 (1994), at 892–95). Plaintiff maintains that Commerce erroneously interpreted § 1677j(b)(1)(B) by concluding that the "assembly or completion" language in the statute covered Macao Commercial's "manufacturing" process. Id. at 11–12.

Plaintiff notably fails to explain why it should prevail under the Chevron framework that this Court uses to assess arguments challenging Commerce's interpretation of statutes. Rather, Plaintiff merely notes that the term "manufacturing" is absent from the language of the statute and its legislative history. See Pl.'s Br. at 11–12. Plaintiff does not contend that the statute unambiguously supports its position, nor does it explain how Commerce's interpretation of the statute is unreasonable. Id. (contending, without any supporting citations, that "Commerce's inconsistent language underscores its misapplication of the statute and is further evidence of a continuing misunderstanding of Macao Commercial's manufacturing process. … As such, Commerce's conclusion is contrary to law."). Plaintiff is correct that neither the statute, nor its legislative history, refer to the term "manufacturing;" however, Commerce relies on legislative history for the conclusion that Congress intended the agency to have broad discretion in interpreting and applying the anti-circumvention statute. See Decision Memorandum at 13 (citing Omnibus Trade Act, Report of the Senate Finance Committee, S. Rep. No. 100-71, at 99–101 (1987)). Specifically, the cited Senate Committee Report states:

> [T]hese subsections grant the Commerce department substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate manner, the Committee expects the Commerce Department to use this authority to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws.

S. Rep. No. 100-71, at 100. Given this, Commerce reasonably rejected Plaintiff's attempt to elevate the agency's use of the term "manufacturing" to escape the scope of § 1677j(b)(1)(B) based on nothing more than semantics.

Plaintiff also contends that Commerce's application of the statute is "not supported by substantial evidence because the record evidence established that Macao Commercial's innersprings are not produced by a process of assembly; rather, they are made using a sophisticated, technology-driven manufacturing process." Pl.'s Br. at 2, 7-11. In its preliminary determination, Commerce cited to Macao Commercial's questionnaire response as the basis for the agency's affirmative finding under § 1677j(b)(1)(B), noting that:

> Macao Commercial acknowledged throughout this proceeding that it sources materials and/or components from China, which it uses to assemble innerspring units in Macau. As such, the distinction Macao Commercial seems to make between components and raw materials is not relevant. Therefore, in accordance with section 781(b)(1)(B) of the Act, we preliminarily find that innerspring units are assembled in Macau by Macao Commercial from Chinese-origin materials and/or components prior to importation into the United States.

See Uncovered Innerspring Units from the People's Republic of China, 83 Fed. Reg. 42,254 (Dep't of Commerce Aug. 21, 2018) (prelim affirm. determ. of circumvention of Order) ("Preliminary Determination"), and the accompanying Issues and Decision Memorandum at 14 (Dep't of Commerce Aug. 9, 2018), available at https://enforcement.trade.gov/frn/summary/prc/2018-17784-1.pdf (last visited this date) ("Preliminary Decision Memorandum"). Plaintiff maintains that "[i]n finding the process is an 'assembly,' Commerce ignored record evidence demonstrating that Macao Commercial does not use any components such as spring coils, border rods or border wires to make its innersprings." Pl.'s Br. at 10. The court disagrees. It is Plaintiff, not Commerce, that appears to be ignoring record evidence in its argumentation. Commerce

cited directly to Macao Commercial's initial questionnaire response that confirmed that "Macao Commercial manufactures the innersprings it makes in Macao from raw materials and consumables it receives from China." See Preliminary Decision Memorandum at 14 n.71 (quoting Macao Commercial's initial questionnaire response). Plaintiff highlights other evidence in the record that suggests that Macao Commercial does not "assemble" Chinese innerspring components; however, Plaintiff fails to demonstrate that Commerce acted unreasonably in finding that Macao Commercial's innerspring units are "completed or assembled in Macau using Chinese-origin materials and/or components prior to importation into the United States" based on the plain language of Macao Commercial's questionnaire response. See Decision Memorandum at 5 (citing Preliminary Decision Memorandum at 14); see also Tianjin Wanhua Co. v. United States, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) (noting that plaintiff must demonstrate that its preferred evidentiary finding is "the one and only reasonable" outcome on the administrative record, "not simply that [its preferred finding] may have constituted another possible reasonable choice."). Accordingly, the court sustains as reasonable Commerce's determination that "the merchandise subject to this anticircumvention inquiry was completed or assembled in Macau using Chinese-origin materials and/or components prior to importation into the United States." Decision Memorandum at 5.

### B. Application of Partial AFA as to 19 U.S.C. §§ 1677j(b)(1)(D) & 1677j(b)(2)(E)

19 U.S.C. § 1677m(d) provides that, prior to disregarding respondent submissions found to be deficient and applying adverse facts available ("AFA"), Commerce must:

"promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle." 19 U.S.C. § 1677m(d). Plaintiff argues that Commerce did not notify Macao Commercial of any deficiencies in its questionnaire responses until the agency issued the Preliminary Determination. See Pl.'s Br. at 12–24. As a consequence, Plaintiff challenges Commerce's determination to apply partial AFA in its assessments under §§ 1677j(b)(1)(D) & 1677j(b)(2)(E) due to Macao Commercial's failure to submit cost reconciliations despite Commerce's repeated requests.

Commerce explained that it had requested cost reconciliation information from Plaintiff since the issuance of the initial questionnaire. See Decision Memorandum at 9 (quoting initial questionnaire's request that respondents "provide complete and fully translated documentation and worksheets supporting the quantification of the costs to complete the production of innersprings at each stage of processing"). In response to Commerce's initial request, Macao Commercial provided only "an overall narrative description and self-selected one set of production records for one shipment to use as an example. … Moreover, while it did provide some source documents (some of which were not completely translated), it did not provide any accounting ledgers into which these flowed, much less demonstrate how the information from the source documents flowed into its accounting records." Id. Commerce then "pointed out Macao Commercial's deficient response and provided more explicit guidance" by issuing a supplemental questionnaire. See id. Lastly, Commerce provided Macao Commercial with additional

extensions of time and clarification as to the nature of the cost reconciliation information the agency expected to receive; however, "Macao Commercial never provided the requested reconciliations and stated that no such reconciliations exist in its normal books and records." Id.

The court cannot see any merit in Plaintiff's argument that it did not receive "prompt notice" of the deficiencies of its questionnaire response. Plaintiff even acknowledges that "[i]n Question 23 of the Supplemental Questionnaire, Commerce explained that Macao Commercial's response to Question 28 of the Initial Questionnaire was 'materially deficient and incomplete,' and repeated its request for cost information, among other information…." Pl.'s Br. at 17. Moreover, Plaintiff notes that its counsel engaged in telephone discussions with Commerce to fully understand Commerce's expectations for Plaintiff's responses to the Supplemental Questionnaire. Id. at 17–21. However, despite repeated clarifications and extensions from Commerce, Plaintiff only provides excuses as to why "Macao Commercial was not able to provide the sort of reconciliation the Commerce described." Id. at 22. Even though Plaintiff concedes that it did not provide information requested by Commerce in the form and manner expressly sought by the agency, Plaintiff maintains that it "was completely unaware that its responses were deemed deficient until Commerce issued its Preliminary Determination." Id. at 22–23.

Commerce explained that it "expects companies to be able to produce a reconciliation of their accounting records based on their normal books and records, upon request." Decision Memorandum at 9–10. Commerce further notes that it directed Plaintiff that "if Macao Commercial does not have a cost accounting system, that it reconcile the

general ledger or trial balance to the books and records normally kept by the company which were used to derive the reported quantity of each input consumed in the production of merchandise covered by the scope of the antidumping duty order." Id. at 10. Commerce fully described why the cost reconciliations it sought were vital for its anti-circumvention determinations and why the agency could not accept Plaintiff's claimed inability to comply with Commerce's request for cost reconciliations:

> Reconciliations are vital to our ability to conduct a anticircumvention inquiry, particularly verification of the cost information relating to our analysis of the factors under sections 781(b)(2)(E) and (b)(1)(D) of the Act. Although the format of the reconciliation of submitted costs to actual financial statement costs depends greatly on the nature of the accounting records maintained by the respondent, the reconciliation represents the starting point of a cost verification because it assures Commerce that the respondent has accounted for all costs before allocating those costs to individual products. The cost reconciliations, along with their supporting documents, show and explain the link between the information the respondent provides in its questionnaire responses and the books and records it maintains in the ordinary course of business, which are critical to ascertain the accuracy of data submitted to address the factors under sections 781(b)(2)(E) and (b)(1)(D) of the Act. Whether or not Macao Commercial has a sophisticated, fully-integrated accounting system is immaterial; Commerce regularly investigates and reviews small companies such as Macao Commercial in its antidumping cases, requesting and obtaining the same kind of reconciliation that Macao Commercial failed to produce. … However, Macao Commercial continuously failed to provide the required cost reconciliation necessary for Commerce to analyze the statutory circumvention criteria and conduct a verification.

Case 1:19-cv-00005-LMG   Document 50   Filed 03/20/20   Page 13 of 20

Court No. 19-00005                                                                                              Page 13

Decision Memorandum at 11. Given the record and Commerce's explanation, Plaintiff's argument that it was "completely unaware" of the deficiency of its submissions begs credulity.

"[T]he burden of creating an adequate record lies with interested parties and not with Commerce." QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011); see also Nan Ya Plastics Corp. v. United States, 40 CIT ___, ___, 810 F.3d 1333, 1337–38 (2016). Macao Commercial's failure to build an adequate record by providing full responses to Commerce's requests resulted in the absence of critical information on the record, and as a result Commerce reasonably applied partial facts available pursuant to 19 U.S.C. § 1677e(a).

Plaintiff next contends that even if Commerce properly found that it was appropriate to rely on partial facts available under 19 U.S.C. § 1677e(a), an adverse inference was not warranted under § 1677e(b) because Macao Commercial complied with Commerce's requests to "the best of its ability." See Pl.'s Br. at 24–30. Plaintiff maintains that "Commerce applied partial AFA based solely on its conclusion that Macao Commercial 'did not provide the requested cost reconciliations.'" Id. at 26 (quoting Decision Memorandum at 12) (emphasis added). Plaintiff's argument, however, selectively quotes Commerce's explanation for its finding under § 1677e(b), which states in full: "Macao Commercial failed to cooperate to the best of its ability to comply with the requests for information because it did not provide the requested cost reconciliations, despite receiving multiple opportunities and several extensions of time." Decision Memorandum at 12 (emphasis added). The omitted explanatory language is critical, as it

demonstrates that Commerce's conclusion that Plaintiff did not act to the "best of its ability" was not merely due to the failure to submit the requested cost reconciliation information. Rather, Commerce's conclusion was based not only on the importance of the specific cost reconciliation information but also on the fact that the agency had provided Plaintiff with additional time and guidance to provide this information in the form and manner that would suit the agency's need, but Plaintiff nonetheless refused to provide this crucial information. See Decision Memorandum at 11–12 (detailing "vital" nature of cost reconciliation information and noting that Commerce's cost reconciliation expectations can be met by small, unsophisticated respondents like Plaintiff); see also Sidenor Indus. SL v. United States, 33 CIT 1660, 1668–69, 664 F. Supp. 2d 1349, 1356–59 (2009) (sustaining, in context of administrative review, Commerce's application of AFA due to respondent's failure to provide requested cost reconciliations). Given this explanation, the court sustains as reasonable Commerce's finding that Macao Commercial did not act to the "best of its ability" under § 1677e(b).[3]

---

[3] Plaintiff also argues that Commerce's decision to apply partial AFA was unlawful because Commerce failed to "conduct a separate analysis" under § 1677e(b). See Pl.'s Br. at 27–29 (arguing that Commerce's AFA determination was improperly based on its "singular analysis" that Macao Commercial "did not provide the requested cost reconciliations"). This argument rests on the same faulty premise as Plaintiff's substantial evidence argument (i.e., that Commerce found Plaintiff did not comply to the best of its ability "solely" due to the failure to provide cost reconciliations). Id. Because Plaintiff's argument hinges on an erroneous characterization of Commerce's finding and explanation, the court rejects Plaintiff's legal argument that Commerce failed to conduct a separate analysis under § 1677e(b).

C. **Macao Commercial's Manufacturing Process as "Minor or Insignificant" under 19 U.S.C. §§ 1677j(b)(1)(C) & 1677j(b)(2)**

Commerce found that Macao Commercial's manufacturing process is "minor or insignificant" under §§ 1677j(b)(1)(C) & 1677j(b)(2). See Pl.'s Br. at 30–43. In making its anti-circumvention inquiry Commerce must determine whether "the process of assembly or completion in the foreign country … is minor or insignificant." 19 U.S.C. § 1677j(b)(1)(C). The statute provides five factors that Commerce must consider in reaching its determination under § 1677j(b)(1)(C): (A) "the level of investment," (B) "the level of research and development," (C) "the nature of the production process," (D) "the extent of production facilities," and (E) "the value of the processing performed" in the foreign country. See 19 U.S.C. § 1677j(b)(2).

Commerce found that the record demonstrated that Macao Commercial had made a "significant" level of investment in Macau under the first factor, § 1677j(b)(2)(A). Nevertheless, Commerce determined that Plaintiff had failed to provide enough evidence on the record to obtain favorable findings as to the other four factors. See Decision Memorandum at 5-6. Plaintiff now challenges the reasonableness of Commerce's findings as to the remaining four factors, §§ 1677j(b)(2)(B)–(E). See Pl.'s Br. at 30–37.

Respecting Commerce's finding under the second factor that Macao Commercial "has not provided evidence of a significant level of R&D expenditures in Macau to assemble and complete innersprings," Plaintiff argues that Commerce unreasonably ignored "the substantial investment [Macao Commercial] made in continually upgrading [its] machinery." Id. at 31; see also Decision Memorandum at 13–14. Commerce

considered Plaintiff's argument under § 1677j(b)(2)(B) regarding Macao Commercial's machinery-related investments; Commerce, however, disagreed with Plaintiff, concluding that the agency "had already accounted for such purchases under" § 1677j(b)(2)(A) and determined that Macao Commercial "was essentially trying to double-count its machinery purchases under two separate criteria." Decision Memorandum at 14. Plaintiff maintains that Commerce should have considered Plaintiff's machinery purchases, and its affiliation with a machine production company heavily involved with research and development of technologies to improve the production efficiency of innerspring-making machinery, as evidence that Plaintiff had a significant "level of research and development in the foreign country" under § 1677j(b)(2)(B). See Pl.'s Br. at 30–33. The court disagrees.

As Commerce explained, it accounted for Macao Commercial's investment in high-tech machinery purchases under § 1677j(b)(2)(A). Commerce reasonably found that considering those same purchases as evidence of Plaintiff's investment in "research and development" under § 1677j(b)(2)(B) would essentially "double-count" Plaintiff's machinery purchases in Commerce's § 1677j(b)(2) evaluation. See Decision Memorandum at 14. Plaintiff contends that "Commerce's conclusion is wholly unsubstantiated," arguing that "Commerce failed to provide a reasoned analysis or explanation, much less any authority whatsoever, for its conclusion that the evidence presented in response to a circumvention inquiry can be used to analyze only one, rather than multiple, factors under § 1677j(b)(2)." Pl.'s Br. at 33. Plaintiff's argument misapprehends Commerce's obligations under the statute and the standard of review. Plaintiff is correct that the statute does not expressly prohibit using the same evidence to

Court No. 19-00005                                                                                                           Page 17

analyze multiple factors under § 1677j(b)(2); however, Plaintiff cannot identify any statutory or regulatory guidance indicating that Commerce cannot account for such "double-counting" in its analysis of each factor. Accordingly, Commerce reasonably refused to double-count Plaintiff's investments in machinery in evaluating Macao Commercial's level of investment under § 1677j(b)(2)(A) and its level of "research and development" under § 1677j(b)(2)(B).

With respect to the third and fourth factors, § 1677j(b)(2)(C) and § 1677j(b)(2)(D), Commerce found that "the nature of the production process in Macau is minor and Macao Commercial's production facility is not extensive." See Decision Memorandum at 13. Commerce explained that its finding was consistent with its analysis in the Preliminary Determination, and Commerce noted that the information on the record "indicated that Macao Commercial uses a minimal number of upstream material inputs and a very small workforce in a production facility of limited size." Id. While Commerce acknowledged that Macao Commercial's production process was automated due to significant investments in machinery (as the agency had found under § 1677j(b)(2)(A)), Commerce emphasized that "a greater degree of automation does not change the fact that the production process for manufacturing innersprings using imported raw materials, as described by Macao Commercial, involves a limited number of both workers and inputs in a small production area." Id.

Plaintiff maintains that these findings are unreasonable considering "the substantial evidence which clearly demonstrated that the nature of the innerspring-making process is significant, and the extent of the production facilities in Macau are

extensive." Pl.'s Br. at 33. Plaintiff highlights various aspects of the record supporting its contention that its "sophisticated technology-driven innerspring-making process" is significant under § 1677j(b)(2)(C). Id. at 34–36. Similarly, Plaintiff describes the information on the record indicating the significant cost and value of its production facilities to support its position under § 1677j(b)(2)(D). Id. at 36–37. At most, the information cited by Plaintiff indicates that Commerce could have reasonably found that the nature of Plaintiff's production process in Macau is significant and Macao Commercial's production facility is extensive. Plaintiff's arguments, however, fail to establish that the information on the record supported one, and only one, reasonable conclusion (i.e., that its production process in Macau is significant and that its production facility is extensive). See Tianjin Wanhua Co. v. United States, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) (noting that plaintiff must demonstrate that its preferred evidentiary finding is "the one and only reasonable" outcome on the administrative record, "not simply that [its preferred finding] may have constituted another possible reasonable choice."). Accordingly, the court sustains Commerce's findings under § 1677j(b)(2)(C) and § 1677j(b)(2)(D) that the nature of Plaintiff's production process in Macau is minor and that its production facility is not extensive.

### D. The Value of Macao Commercial's Processing under 19 U.S.C. §§ 1677j(b)(1)(D) & 1677j(b)(2)(E)

Lastly, Plaintiff contends that Commerce improperly found that the value of the processing performed in Macau "represents a small proportion of the value of the merchandise imported into the United States" pursuant to the fifth factor, § 1677j(b)(2)(E).

See Pl.'s Br. at 37–43. Plaintiff specifically argues that Commerce "failed to conduct a qualitative analysis" in reaching its determination under § 1677j(b)(2)(E), and further maintains that Commerce improperly applied partial AFA in reaching its § 1677j(b)(2)(E) finding by relying on facts from Uncovered Innerspring Units from the People's Republic of China, 79 Fed. Reg. 78,794 (Dep't of Commerce Dec. 31, 2014) ("Goldon"). Pl.'s Br. at 39. Plaintiff repeats these same arguments in challenging Commerce's "determination that the value of the Chinese-origin raw materials used by Macao Commercial to manufacture in Macau innersprings exported to the United States represents a significant portion of the total value of the merchandise exported to the United States" pursuant to § 1677j(b)(1)(D). See id. at 43–45 (noting "Commerce's decision to resort to partial AFA and to rely on the facts of Goldon was improper for all the reasons set forth supra"). Defendant, however, points out that Plaintiff failed to raise these issues in its case brief before Commerce and thus failed to exhaust its administrative remedies. See Def.'s Resp. at 26, 28. While Plaintiff notes that it made a general challenge to Commerce's value determinations under §§ 1677j(b)(1)(D) & 1677j(b)(2)(E) in its administrative case brief, Plaintiff cannot dispute that it failed to raise the specific arguments challenging Commerce's failure to conduct a qualitative analysis and Commerce's reliance on Goldon. See generally Macao Commercial Case Brief at 4–5, 12–16, PD[4] 274 at barcode 3753511-01, CD 304 at barcode 3753509-01. Instead, Plaintiff attempts to rely on certain language from the court's scheduling order as a basis for avoiding the consequences of

---

[4] "PD" refers to a document contained in the public administrative record. "CD" refers to a document contained in the confidential record.


Court No. 19-00005  Page 20

its failure to exhaust its administrative remedies. See Pl.'s Reply at 13–14 n.3 (citing Scheduling Order at 2, ECF No. 26). The Scheduling Order states: "Please do not merely cut-and-paste arguments from administrative case briefs, and think anew about the issues against the operative standards of review the court must apply." See Scheduling Order at 2. Plaintiff cites the court's encouragement for parties to "think anew about the issues" as providing apparent permission for Plaintiff to raise new arguments that it failed to make to Commerce in the administrative proceeding. See Pl.'s Reply at 14 n.3.

However, Plaintiff's understanding is misplaced, as the very next sentence in the scheduling order states: "Likewise, please make sure you have exhausted your administrative remedies and raised the issues by presenting your arguments to the agency in the first instance." Scheduling Order at 2. Simply put, Plaintiff failed to present to Commerce the specific arguments challenging Commerce's determination under §§ 1677j(b)(1)(D) & 1677j(b)(2)(E) that it now raises before the court. The court therefore will disregard Plaintiff's arguments on these issues due to a failure to exhaust its administrative remedies as to these arguments. See Essar Steel, Ltd. v. United States, 753 F.3d 1368, 1374 (Fed. Cir. 2014).

## IV.  Conclusion

For the foregoing reasons, the court sustains the Final Determination. Judgment will be entered accordingly.

                                              /s/ Leo M. Gordon
                                        Judge Leo M. Gordon

Dated: March 20, 2020
      New York, New York